United States District Court
Southern District of Texas

**ENTERED**
March 31, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| STEWARD HEALTH CARE SYSTEM. | § | |
| LLC, *et al.* | § | CIVIL ACTION NO. 4:25-CV-01584 |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal in which Appellants challenge the bankruptcy court's order granting a Turnover Motion. The Court **AFFIRMS** the bankruptcy court's judgment.

## I.   BACKGROUND

This appeal challenges a bankruptcy court's grant of a Turnover Motion in which the bankruptcy court orders trustees of assets related to certain deferred compensation plans to transfer the proceeds of such plans to the Appellees. (Dkt. 16-1 at p.  6); *see also* Bankr. S.D. Tex. Case No. 28:0158 at Dkt. 4418. Appellants, certain participants in the deferred compensation plans, argue that this order by the bankruptcy judge constitutes reversible error. (Dkt. 19).

Debtor Steward Health Care System, LLC ("Steward"), a private, physician-led hospital system, filed chapter 11 bankruptcy in 2024. (Dkt. 26 at p. 10). Steward and certain of its affiliates (collectively, "Debtors") sponsored two deferred compensation plans ("the Plans"). (Dkt. 19 at p. 15). These Plans permitted certain professionals to defer a portion of their annual compensation with the benefit of reducing their tax liability. (Dkt. 26 at p.

1 / 15

10). Upon Steward's filing of bankruptcy, the Plans were terminated. (Dkt. 19 at p. 15). After such, the assets meant to fund Debtors' obligations under the Plans were placed in certain trusts. (*Id*. at p. 15).

Debtors filed a Turnover Motion requesting that the bankruptcy court order the trustees of these trusts to deliver "the trust assets or proceeds thereof" to Debtors. *Id*. The Debtors argued that the trust assets were Debtors' property because the Plans qualified as "'top hat' plans exempt from the presumptive fiduciary protections of" the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id*. at p. 16). Appellants objected to the Turnover Motion. *Id*.

Appellants also initiated an adversary proceeding by filing a class-action complaint seeking equitable relief. (*Id*. at p. 17). With such, Appellants filed a motion seeking mandatory withdrawal of the reference because the adversary complaint "required detailed consideration of ERISA—and only ERISA—and adjudication of certain issues under ERISA not settled in the Fifth Circuit." *Id*. Appellants requested that the bankruptcy court stay its hearing on the Turnover Motion pending resolution of this motion to withdraw. *Id*. After a hearing on Appellant's motion to stay, the bankruptcy court determined that it would proceed with the Turnover Motion. (*Id*. at p. 18). The bankruptcy court set the Turnover Motion for a full evidentiary hearing ("the Turnover Hearing") and established discovery deadlines. *Id*.

At the hearing on Appellant's motion to stay, a series of emails were referenced. *Id*. Debtors moved to seal the hearing a few days after the fact, claiming that the emails were

protected by attorney-client privilege and that Debtors had inadvertently produced the documents. *Id*. Appellants opposed the motion to seal the hearing, arguing that the emails were not privileged and, if they were, Debtors had waived any such privilege. *Id*. Appellants filed a motion to compel the production of the emails in addition to a privilege log. (*Id*. at p. 19). The bankruptcy court did not rule on the motion to seal nor the motion to compel prior to the Turnover Hearing. *Id*.

Appellants proceeded to prepare for the hearing on the Turnover Motion by conducting expedited discovery. *Id*. "Throughout this time," Appellants allege, "discovery continued to reveal new evidence, including previously undisclosed documents and material witnesses[.]" *Id*. Two days before the hearing and "in light of the newly discovered evidence," Appellants filed a motion to continue the Turnover Hearing. (*Id*. at p. 20). Despite this motion, the bankruptcy court held the hearing as scheduled. *Id*.

In the two-day Turnover Hearing, the bankruptcy court "admitted nearly 300 exhibits, heard live testimony from five (5) witnesses, and took into evidence (11) witness declarations and related deposition transcripts for the eleven witnesses (which constituted cross examination)." *Id*. The bankruptcy court issued its ruling just under a week later, ordering that the trustees turnover the assets at issue to Debtors ("the Turnover Order"). *Id*.

Appellants thereafter filed this appeal challenging both the bankruptcy court's procedural orders leading up to the Turnover Hearing and the bankruptcy court's ultimate decision on the Turnover Motion. (*Id*. at p. 21). Appellants request that the Court reverse the Turnover Order and remand the matter to the bankruptcy court for further adjudication.

(*Id*. at p. 55). Debtors argue that the two-day Turnover Hearing was sufficient, and the evidence proffered in such supports the bankruptcy court's decision. (Dkt. 26 at p. 9). Therefore, they request that this Court affirms. (*Id*. at p. 10).

## II.    LEGAL STANDARD

Federal district courts have jurisdiction to hear appeals from the final judgments of bankruptcy judges. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). As such, the Court reviews the bankruptcy court's legal conclusions *de novo*, but it may only disregard the bankruptcy court's factual findings if they are clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003).

On appeal, the Court only considers arguments that the appellant made before the bankruptcy court. *See MaddenSewell, LLP v. Mandel*, 498 B.R. 727, 729 (E.D. Tex. 2013) ("Arguments not raised with the bankruptcy court cannot be pursued in an appeal of the bankruptcy court's order.") (citing *Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993)).

## III.    ANALYSIS

The Court affirms the bankruptcy court's judgment. Neither the law nor the record supports the contention that the bankruptcy court made errors in its legal conclusions or factual findings. Accordingly, the Court affirms the judgment in its entirety.

**A.      Proceeding Through the Contested Matter**

Appellants assert that the bankruptcy court "committed clear and reversible error by resolving a bona fide dispute over asset ownership through a turnover motion brought under section 542 of the Bankruptcy Code." (Dkt. 19 at p. 23). Specifically, Appellants argue that because the parties disagreed over whether the Plans were "top hat" plans, a legitimate dispute existed over who owned the assets. (*Id*. at p. 24).

The Court reviews this issue of law *de novo*. *Matter of Coston*, 987 F.2d 1096, 1099 (5th Cir. 1992), *aff'd on reh'g*, 991 F.2d 257 (5th Cir. 1993). *De novo* review requires the Court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions. *In Re England*, 141 B.R. 495, 497 (N.D. Tex. 1991), *aff'd*, 975 F.2d 1168 (5th Cir. 1992).

Section 542 of the Bankruptcy Code provides that, subject to certain exceptions, "'an entity … in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease … shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.'" *Norris v. Johnson*, No. 96-30146, 1997 U.S. App. LEXIS 41449, at *21 (5th Cir. Apr. 11, 1997) (quoting 11 U.S.C. § 542). In effect, section 542 "provides for turnover of property of the bankruptcy estate to the bankruptcy trustee." *Hinsley v. Boudloche (In re Hinsley)*, No. 97-20967, 1998 U.S. App. LEXIS 39954, at *34 (5th Cir. July 15, 1998); *see also Browning v. Navarro*, 826 F.2d 335, 340 (5th Cir. 1987) ("[A] turnover suit is one in

which a trustee or custodian seeks to obtain property of the estate that is in the possession of a third party.").

The Fifth Circuit has not opined on whether section 542 requires that title to assets be certain to be eligible for turnover. *See Thomas v. Hughes*, No. 5:16-CV-951-DAE, 2019 U.S. Dist. LEXIS 63781, at \*36 (W.D. Tex. Feb. 21, 2019) ("The Court acknowledges the lack of guidance from case law in this Circuit regarding whether Section 542 requires title to assets be certain and ascertained in order to be eligible for turnover."). However, the Fifth Circuit's lack of guidance does not affect the Court's inquiry at present.

Here, "the parties holding the property—the trustees—consented to the requested relief" in the Turnover Motion. (Dkt. 26 at p. 35). As such, the party holding the Debtors' property agreed to voluntarily turnover the assets to the estate. *See* (Dkt. 20-21 at p. 24) ("[The bankruptcy court judge doesn't] need to force the Trustees. And regardless, the Trustees are not objecting."). Under such circumstances, no adversary proceeding is required. *See In re Alpha Nat. Res., Inc.*, 554 B.R. 787, 799 (Bankr. E.D. Va. 2016) ("No adversary proceeding was required in this case because the party holding the Debtors' property consented to the relief."). Accordingly, the Court finds that the bankruptcy court's decision to proceed with the Turnover Motion under section 542 was proper.

**B.     Motion to Withdraw the Reference**

Appellants assert that bankruptcy courts are "constitutionally barred from taking any action" that would "interfere with or moot [a] district court's ultimate decision on [a] motion to withdraw the reference." (Dkt. 19 at p. 26). They argue that the Turnover Order

impermissibly mooted the pending motion to withdraw the reference and therefore must be vacated. (*Id*. at p. 28). Again, matters of law are reviewed *de novo*. *Coston*, 987 F.2d at 1099.

Appellants are mistaken on their basic premise. Bankruptcy courts frequently decide issues that moot motions to withdraw the reference. *See, e.g., Charitable DAF Fund L.P. v. Highland Capital Mgmt., L.P.*, No. 3:22-CV-2802-B, 2023 U.S. Dist. LEXIS 128881, at *1 (N.D. Tex. July 26, 2023) ("Before the Court is Plaintiffs['] [] Renewed Motion to Withdraw the Reference. Because the bankruptcy court has since granted Defendants' motion to dismiss in the underlying adversary proceeding, the Motion is denied as moot."); *In re Aberta, Inc.*, No. 14-1910, 2014 U.S. Dist. LEXIS 157001, at *11 (E.D. La. Nov. 6, 2014) ("While the cases were pending in the bankruptcy court, Hebert noticed for submission before this Court his request that the bankruptcy reference be withdrawn. … Meanwhile, [] the bankruptcy proceedings [] were dismissed. Because bankruptcy jurisdiction no longer existed…, this Court denied as moot the motion to withdraw the reference[.]"); *S. Pac. Transp. Co. v. Voluntary Purchasing Grps.*, 252 B.R. 373, 380 (E.D. Tex. 2000) ("In light of the Bankruptcy Court's entry of the confirmation order, the court also later denied as moot the Railroads' motion for mandatory withdrawal of the reference of the CERCLA environmental settlement agreements."). Appellants' argument on this point is therefore unfounded and unpersuasive. The Court will not reverse the bankruptcy court on these grounds.

7 / 15

## C.    Refusing to Stay

According to Appellants, the bankruptcy court's "refusal to stay the hearing on the Turnover Motion in favor of the Adversary Proceeding or, alternatively, continue the Turnover Evidentiary Hearing to allow proper discovery severely prejudiced Appellants' rights to due process." (Dkt. 19 at p. 29). Appellants' requested stay was in pursuit of more time to conduct discovery. (*Id*. at p. 30).

The Court reviews the bankruptcy court's denial of a motion to stay for an abuse of discretion. *See Prudential Mortg. Capital Co., L.L.C. v. Faidi*, 444 F. App'x 732, 736 (5th Cir. 2011). Because trial courts enjoy wide discretion in granting or denying continuances, the denial of a continuance will be affirmed unless the denial is arbitrary or clearly unreasonable. *Command-Aire Corp. v. Ontario Mech. Sales and Serv., Inc.*, 963 F.2d 90, 96 (5th Cir. 1992); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 (5th Cir. 1995) (citations omitted); *In re Triple E Transp.*, 169 B.R. 368, 372 (E.D. La. 1994); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) ("[D]eference … is the hallmark of abuse-of-discretion review.").

There is nothing in the record to indicate that the bankruptcy court's refusal to stay the Turnover Hearing was an arbitrary or clearly unreasonable decision. The Court cannot find that the bankruptcy court's denial of Appellant's motion to stay was an abuse of discretion.

## D.   Bankruptcy Court's Jurisdiction

Appellants argue that the bankruptcy court erred as a matter of law in ruling on the Turnover Motion because it only had "related to" jurisdiction over the matter. (Dkt. 19 at p. 12).  The Court reviews issues of jurisdiction *de novo*. *See Espinal v. Holder*, 636 F.3d 703, 705 (5th Cir. 2011).

"Various courts have concluded that matters requiring a declaration of whether certain property comes within [section] 541's definition of 'property of the estate' are core proceedings." *Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*, 387 B.R. 95, 105 (Bankr. D. Del. 2008) (collecting cases). More specifically, courts have recognized that cases involving the determination of whether certain deferred compensation plans constitute "top hat" plans as core proceedings. *See, e.g., In re Wash. Mut., Inc.*, 450 B.R. 490, 493 (Bankr. D. Del. 2011) ("[T]he question of who is entitled to assets held in trusts created in connection with deferred employee compensation plans … is a core proceeding[.]"). Finally, under statute, "[c]ore proceedings include … orders to turn over property of the estate." 28 U.S.C. § 157(b)(2)(E).

The Court finds that the bankruptcy court had jurisdiction over this matter as a core proceeding. It cannot reverse the bankruptcy court's decision on these grounds.

## E.   Privileged Evidence

Appellants argue that the bankruptcy court's failure to decide the discovery issue regarding allegedly privileged emails prior to the Turnover Hearing was legal error. (Dkt. 19 at p. 31). The bankruptcy court's management of its docket, and the timing of its

decisions, are well within its discretion. *See Bouchillon v. Caffey*, 539 B.R. 102, 105 (N.D. Miss. 2015) ("[The timing of a ruling] is the sort of case management decision which trial courts are routinely called upon to make, and an abuse of discretion standard clearly applies to this ruling."). Again, when a bankruptcy court's decisions are discretionary in nature, the Court reviews the exercise of this power for abuse of discretion. *In re Pratt*, 524 at 584; *see also Gen. Elec. Co.*, 522 U.S. at 143 ("[D]eference … is the hallmark of abuse-of-discretion review.").

There is nothing in the record to indicate that the bankruptcy court's failure to address the discovery issue was an arbitrary or clearly unreasonable decision. *See Transamerica Ins. Co.*, 66 F.3d at 721 ("The standard by which we review the district court's denial of a continuance for additional discovery is abuse of discretion, and we will affirm that denial unless it is arbitrary or clearly unreasonable."). The Court cannot find that the bankruptcy court's handling of Appellants' motion to seal or motion to compel was an abuse of discretion.

## F.    Expert Witness Testimony

Appellants argue that the bankruptcy court erred both in failing to exclude Debtors' expert, Dr. Josphe Krock ("Dr. Krock"), and in discounting the Appellants' expert witness, Mr. Scott Van Meter ("Van Meter"). (Dkt. 19 at pp. 36 – 38). The Court reviews the bankruptcy court's decision to admit expert testimony for abuse of discretion. *See Lightfoot v. MXEnergy Elec., Inc. (In re MBS Mgmt. Servs.)*, 690 F.3d 352, 354 (5th Cir. 2012); *see*

*also Gen. Elec. Co.*, 522 U.S. at 143 ("[D]eference … is the hallmark of abuse-of-discretion review.").

The bankruptcy court denied Appellants' oral motion to exclude Dr. Krock's testimony at the Turnover Hearing. (Dkt. 19 at p. 37). Appellants argued that testimony from a separate witness "revealed that the information provided to Dr. Krock—and Appellants' expert—was incorrect and unreliable." *Id*. However, after a review of caselaw and sufficient consideration of Dr. Krock's methodology, the bankruptcy court found Dr. Krock and his testimony to be credible. (Dkt. 26 at p. 42). The Court cannot find anything in the record to support the contention that this decision was a clearly erroneous assessment of the evidence. *See Lightfoot*, 690 F.3d at 354. Nor did the bankruptcy court utilize an erroneous view of the law. *See id*.

Next, the bankruptcy court disregarded Mr. Van Meeter's testimony "because Appellants' counsel could not point to a specific, alleged document that formed the basis for" a certain figure informing his analysis. (Dkt. 19 at p. 39). This figure, according to Mr. Van Meeter's own testimony, was given to him by Appellants' counsel—and never backed up by any "document or deposition testimony." (Dkt. 26 at p. 46). The Court refuses to find that the bankruptcy court's decision not to consider such data was an abuse of discretion. Nothing in the record supports Appellants' argument that the bankruptcy court's refusal to credit this unsupported assumption was a clearly erroneous assessment of the evidence. *See Lightfoot*, 690 F.3d at 354.

Accordingly, the bankruptcy court's decisions regarding Dr. Krock's and Mr. Van Meeter's testimony are not an abuse of discretion.

## F.     Burden of Proof

Appellants assert that the bankruptcy court "simply ignored the correct legal standards under ERISA when it determined that [the Plans] were 'top hat' plans outside of ERISA's broad regulatory ambit." (Dkt. 19 at p. 40). More specifically, Appellants argue that the bankruptcy court shifted Debtors' burden of proof to Appellants by allowing "the language of the relevant plan documents [to prevail] unless the <u>Appellants</u> overcame the presumption in favor of that language." (*Id*. at p. 46) (emphasis in original). Again, matters of law are reviewed *de novo*. *Coston*, 987 F.2d at 1099.

The parties agree that Debtors held the burden of proof on this issue. (Dkt. 19 at p. 46); (Dkt. 26 at p. 24); *see generally Kirkindoll v. NCUA Bd.*, Civil Action No. 3:11-CV-1921-D, 2013 U.S. Dist. LEXIS 165197, at *7 (N.D. Tex. Nov. 20, 2013) ("Because ERISA preemption is an affirmative defense, defendants bear the burden of proof regarding the existence of an ERISA plan.") (citing *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006)). While Appellants' argument is creative, it does not hold water. The bankruptcy court did, in fact, apply the appropriate burden to Debtors. (Dkt. 26 at p. 25) ("[Debtors] had the burden of proving matters today. … They've done so in my opinion by more than a preponderance of the evidence."). As such, neither the record nor the law supports Appellants' contention that the bankruptcy court erred in applying the burden of proof.

**G.      ERISA Provisions**

Appellants argue that the bankruptcy court erred "when it failed to consider whether [the Plans'] participants had any influence to negotiate compensation agreements or otherwise had access to the tools and transparency necessary to protect their interests and appreciate and plan for the risk involved in participating in [the Plans]." (Dkt. 19 at p. 50). Once more, matters of law are reviewed *de novo*. *Coston*, 987 F.2d at 1099.

For a deferred compensation plan to qualify as a "top hat" plan, "it must be (1) unfunded and (2) maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." *Reliable Home Health Care v. Union Cent. Ins. Co.*, 295 F.3d 505, 512 (5th Cir. 2002). Neither of these elements creates an explicit requirement for substantial influence or bargaining power. While a Department of Labor opinion letter suggests that substantial influence or bargaining power may be a consideration in this analysis, the Fifth Circuit has not opined on whether the existence of such is a requisite element to establish that a plan qualifies as a "top hat" plan. Department of Labor Op. No. 90-14A; *see Tolbert v. RBC Capital Mkts. Corp.*, Civil Action No. H-11-0107, 2015 U.S. Dist. LEXIS 55196, at *15 (S.D. Tex. Apr. 28, 2015 ("[T]he Fifth Circuit has not directly ruled that DOL Opinion 90-14A sets forth essential requirements for establishing a valid top hat plan.").

"The bankruptcy court deemed bargaining power 'a consideration' in the selectivity analysis but found 'nothing in [ERISA's] test implying that selectivity requires finding influence of the employee or bargaining power.'" (Dkt. 26 at p. 25). The law supports the

13 / 15

bankruptcy court's ruling on this matter. The Court finds nothing to support Appellants' contention that the bankruptcy court committed legal error in making such a determination.

## H.    Deferred Compensation Plans

After conducting an evidentiary hearing, the bankruptcy court found that the Plans were both unfunded and selective—and therefore qualified as "top hat" plans. (Dkt. 19 at p. 20); *see also* (Dkt. 26 at p. 27). Appellants argue that the bankruptcy court came to this conclusion in error by "ignor[ing] uncontroverted evidence." (Dkt. 19 at pp. 51 – 55).

The bankruptcy's conclusion that the Plans constitute "top hat" plans is a finding of fact. *See Tolbert*, 758 F.3d at 627 ("The resolution of the dispute over the 'top hat' exemption may require factual determinations regarding, for example, selectivity and high compensation."). "A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). The Fifth Circuit has emphasized that, under the "clearly erroneous" standard, this Court "may [not] weigh the evidence anew" and may only set aside the bankruptcy court's fact findings if it is "left with the definite and firm conviction that a mistake has been committed." *In re Perry*, 345 F.3d at 309 (quotation marks omitted).

The Court finds that nothing in the record supports a definite and firm conviction that a mistake has been committed. Accordingly, the Court must affirm the bankruptcy court's finding on this issue.

## IV.    CONCLUSION

14 / 15

The record does not support reversal of the bankruptcy court's Turnover Order. The Court therefore **AFFIRMS** the bankruptcy court's judgment. The Court will issue a separate final judgment.

SIGNED at Houston, Texas on March 31, 2026.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE