# *United States Court of Appeals*

FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

United States Courts
Southern District of Texas
FILED
*August 31, 2026*
Nathan Ochsner, Clerk of Court

August 31, 2026

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 26-20150 Purohit v. Steward Health Care
USDC No. 4:25-CV-1584

The court has granted the motion to supplement the record in this case with Exhibit A of the motion. The originating court is requested to add the attached motion and documents to their court's docket and to provide us with a supplemental electronic record. Counsel is reminded that any citations to these documents must cite to the supplemental electronic record.

Sincerely,

LYLE W. CAYCE, Clerk

By: Melissa Mattingly
Melissa V. Mattingly, Deputy Clerk
504-310-7719

Mr. Allan Brent Diamond
Mr. Robert Flatow
Mr. Robert J. Keach
Mr. Gabriel Adam Morgan
Ms. Jennifer Novo
Mr. Nathan Ochsner
Mr. Gregory Stuart Silbert

**CASE NO. 26-20150**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

4:25cv1584

---

**IN RE STEWARD HEALTH CARE SYSTEM, LLC, *et al.*,**
***Debtors***

**DR. MANISHA PUROHIT, DR. DIANE PAGGIOLI, DR. JAMES THOMAS, DR. THOMAS ROSS, DR. MICHAEL REGAN, DR. PETER LYDON, DR. SRIDHAR GANDA, DR. A. ANA BEESEN, DR. BENOY ZACHARIAH, DR. BARRY ARKIN, DR. BRUCE KRIEGEL, DR. GARY MILLER, DR. JENNIFER SKOLNICK, DR. STEPHEN MCELROY, DR. ROBERT DART, DR. ROBERT LOWENSTEIN, and DR. IRINA KOGAN,**
***Appellants,***

**v.**

**STEWARD HEALTH CARE SYSTEM, L.L.C., *et al.*,**
***Appellees.***

---

**APPELLANTS' RENEWED UNOPPOSED MOTION TO SUPPLEMENT THE RECORD ON APPEAL**

Dr. Manisha Purohit, Dr. Diane Paggioli, Dr. James Thomas, Dr. Thomas Ross, Dr. Michael Regan, Dr. Peter Lydon, Dr. Sridhar Ganda, Dr. A. Ana Beesen, Dr. Benoy Zachariah, Dr. Barry Arkin, Dr. Bruce Kriegel, Dr. Gary Miller, Dr. Jennifer Skolnick, Dr. Stephen McElroy, Dr. Robert Dart, Dr. Robert Lowenstein, and Dr. Irina Kogan (the "**Appellants**") respectfully move this Court to supplement the record on appeal in the above-captioned case pursuant to Federal Rule of Appellate Procedure ("**FRAP**") Rule 10(e), and in support thereof state as follows:

1. On April 1, 2026, the Appellants timely filed their appeal from the United States District Court for the Southern District of Texas (the "**District Court**") of an order affirming the ruling in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") granting a motion for the turnover of assets. The Appellants submitted their statement of issues and designation of record on appeal (the "**Designation of Record**") with the District Court on April 8, 2026. The electronic record on appeal ("**EROA**") was filed with this Court on April 23, 2026.

2. During the process of completing merits briefing, Appellants discovered that the EROA did not include some pleadings and other documents relevant to the appeal that were included in the Designation of Record, primarily an objection to a motion for judgment on the pleadings filed in the related underlying adversary proceeding (collectively, the "**Missing Documents**").

3. The Missing Documents are attached hereto as **<u>Exhibit A</u>**.

4. Pursuant to FRAP 10(e), this Court has the discretion to approve a request to supplement the record on appeal.

5. The Missing Documents are material to the issues on appeal and are necessary for the appellate record to reflect the full sequence of events relevant to the appeal. Therefore, Appellants seek to supplement the record to include all pleadings that were designated as part of the record on appeal.

6. On August 21, 2026, Appellants notified counsel for Debtors-Appellees, who also represented Debtors-Appellees throughout the entire course of the proceedings below, of the issue and sought their position on this filing. Debtors-Appellees consented to supplementing the record with the Missing Documents.

WHEREFORE, Appellants respectfully request that this Honorable Court: (i) grant the motion and (ii) supplement the EROA with the Missing Documents attached hereto as Exhibit A.

Dated: August 28, 2026

Respectfully submitted,

DR. MANISHA PUROHIT, DR. DIANE PAGGIOLI, DR. JAMES THOMAS, DR. THOMAS ROSS, DR. MICHAEL REGAN, DR. PETER LYDON, DR. SRIDHAR GANDA, DR. A. ANA BEESEN, DR. BENOY ZACHARIAH, DR. BARRY ARKIN, DR. BRUCE KRIEGEL, DR. GARY MILLER, DR. JENNIFER SKOLNICK, DR. STEPHEN MCELROY, DR. ROBERT DART, DR. ROBERT LOWENSTEIN, and DR. IRINA KOGAN

By their Attorneys:

*/s/ Allan B. Diamond*

Allan B. Diamond, Esq.
Christopher D. Johnson, Esq.
Brian R. Hogue, Esq.
Diamond McCarthy, LLP
2200 Post Oak Boulevard, Suite 1000
Houston, TX 77056-4716
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

Email:
allan.diamond@diamondmccarthy.com
chris.johnson@diamondmccarthy.com
brian.hogue@diamondmccarthy.com

Robert J. Keach, Esq.
Jennifer S. Novo, Esq.
Verrill Dana LLP
One Portland Square, 10th Floor
Portland, ME 04101
Telephone: (207) 774-4000
Facsimile: (207) 774-7499
Email:
rkeach@verrill-law.com
jnovo@verrill-law.com

*Counsel for the Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2026, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ Allan B. Diamond*

# CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the motion exempted by Rule 32(f), this motion contains 394 words.

2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Allan B. Diamond*

## CERTIFICATE OF CONFERENCE

I certify that I have contacted Appellees' counsel, who stated that Appellees do not oppose the relief requested herein.

Respectfully submitted,

*/s/ Allan B. Diamond*

# EXHIBIT A

Missing Documents

| United States Bankruptcy Court, Southern District of Texas *Adversary Proceeding No. 25-03066* | | |
|---|---|---|
| **Initial Filing Date** | **Description** | **Docket No.** |
| 05/15/25 | Objection to Rule 12(c) Motion for Judgment on the Pleadings | 19 |

| United States Bankruptcy Court, Southern District of Texas *Chapter 11 Cases, No. 24-90213* | | |
|---|---|---|
| **Initial Filing Date** | **Description** | **Docket No.** |
| 03/26/25 | Courtroom Minutes. Time Hearing Held: 9:00 AM. Appearances: PLEASE SEE ATTACHED. ERO/Courtroom Deputy: Y. Lila. (Related document(s): 3277 Trial – Day 1). Arguments Heard. Evidence Presented. Witnesses: Patrick Lombardo, Katchena Potter, Manisha Purohit, Joseph Krock, Scott Van Meter. Trial – Day 2 is scheduled for 3/27/2025 at 09:00 AM at Houston, Courtroom 401 (CML). (Entered: 03/26/2025) | 4365 |

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>STEWARD HEALTH CARE SYSTEM, LLC, *et al.*,<br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90213 (CML)<br>(Jointly Administered) |
| Dr. Manisha Purohit, Dr. Diane Paggioli, Dr. James D. Thomas, Dr. Thomas Ross, Dr. Michael Regan, Dr. Peter Lydon, Dr. Sridhar Ganda, and Dr. A. Ana Beesen, for themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Steward Health Care System LLC, IASIS Healthcare, LLC, and Patrick Lombardo, in his role as Executive Vice President for Human Resources for Steward Heath Care System LLC; and John and Jane Does, in their roles as Committee Members and/or Management Board Members,<br><br>Defendants. | Adv. Proc. No. 25-03066 |

**OBJECTION OF NAMED PLAINTIFFS TO STEWARD HEALTH CARE SYSTEM, LLC AND IASIS HEALTHCARE, LLC'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

Dr. Manisha Purohit, Dr. Diane Paggioli, Dr. James Thomas, Dr. Thomas Ross, Dr. Michael Regan, Dr. Peter Lydon, Dr. Sridhar Ganda, and Dr. A. Ana Beesen, participants in and beneficiaries of the Debtors' Deferred Compensation Plans (defined below) (collectively, the "**Named Plaintiffs**"), on their own behalf and on behalf of other participants in the Deferred Compensation Plans, submit this objection (the "**Objection**") to *Steward Health Care System, LLC and IASIS Healthcare, LLC's Rule 12(c) Motion for Judgment on the Pleadings* [Adv. Proc. No. 25-03066, Dkt. No. 17] (the "**Motion**"), filed by Steward Health Care System, LLC ("**Steward**") and IASIS Healthcare, LLC ("**IASIS**" and, with Steward, the "**Debtor Defendants**"). In support of this Objection, the Named Plaintiffs state as follows:

## BACKGROUND

### A. Debtors' Bankruptcy & Named Plaintiffs' Deferred Compensation.

1. Steward and certain of its affiliates ("**Debtors**") sponsored two deferred compensation plans: the (1) Steward Health Care Deferred Compensation Plan ("**Steward Plan**") and (2) the IASIS Healthcare Executive Savings Plan ("**IASIS Plan**," and with the Steward Plan, the "**Deferred Compensation Plans**"). The Named Plaintiffs are certain participants in the Deferred Compensation Plans.

2. Debtors allegedly maintained assets meant to fund Debtors' obligations under the Deferred Compensation Plans in one of two "Rabbi Trusts" pursuant to either the *Amended and Restated Rabbi Trust Agreement* ("**Steward Trust Agreement**") or the *IASIS Healthcare Executive Savings Plan Trust Agreement* ("**IASIS Trust Agreement**," with Steward Trust Agreement, the "**Trust Agreements**").[2]

[2] Evidence adduced at and in preparation for trial on this matter revealed that Debtors did not hold the IASIS Plan's assets in a Rabbi Trust or any other trust. Declaration of Brian R. Hogue ISO Motion (Hogue Decl.) at ¶ 4, Ex. 2, Mar. 26 Tr. 126:12-22 (Lombardo Cross Examination); 168:18-172:1 (Potter Cross Examination); ¶ 6, Ex. 4 (Trial Ex. 115 (Feb. 20, 2024 email)).

3. The IASIS Plan was frozen in 2017, and no participant deferrals have been made into it since 2017. On May 6, 2024 (**"Petition Date"**), Debtors filed for relief under Chapter 11 of the Bankruptcy Code, and both Deferred Compensation Plans were terminated. No participant deferrals have been made into the Steward Plan since the Petition Date.

**B. The Turnover Motion, Abbreviated Discovery, and Turnover Evidentiary Hearing.**

4. On November 11, 2024, approximately six months after termination of the Deferred Compensation Plans, Debtors filed a *Motion for an Order (A) Directing Trustees to Turn Over and Deliver Trust Assets or Proceeds thereof to the Debtors, (B) Authorizing the Debtors to Exercise Ownership Rights over Such Assets, (C) Authorizing Termination of Trusts, and (D) Granting Related Relief* [Dkt. No. 3277[3]] (**"Turnover Motion"** and the contested matter created thereby, the **"Contested Matter"**). The Debtors argued that the plan assets (the **"Plan Assets"**) were Debtors' property because the Deferred Compensation Plans were "top hat" plans exempt from the fiduciary protections of the Employee Retirement Income Security Act (**"ERISA"**) rather than assets held in trust for the exclusive benefit of the plan participants and their beneficiaries (the admitted outcome if the Deferred Compensation Plans are not top hat plans).

5. The Named Plaintiffs objected to the Turnover Motion on December 17, 2024 [Dkt. No. 3497] (**"Turnover Objection"**). In the middle of the first sentence of the Turnover Objection, the Named Plaintiffs footnoted and highlighted a clear reservation of all rights to pursue equitable and other relief ***in a class action*** in the event pre-litigation discovery revealed evidence that the Deferred Compensation Plans were not top hat plans. See Turnover Objection, fn. 2. If discovery revealed a good-faith basis to allege that the Deferred Compensation Plans were not "top hat"

[3] Unless otherwise noted, all docket numbers shall refer to pleadings filed in the chapter 11 bankruptcy case, Case No. 24-90213.

plans, as it eventually did, class action litigation was required to resolve the disputed material facts and legal and equitable issues necessary to determine top hat status and to afford class-wide affirmative relief.[4]

6. As stated in the Turnover Objection, the Named Plaintiffs initiated pre-litigation discovery under Bankruptcy Rule 2004 concurrently with the filing of the Turnover Objection. On December 24, 2024, the Named Plaintiffs filed a *Notice of Rule 2004 Examination and Request for Production of Documents* [Dkt. No. 2560]. On December 31, 2024, the Named Plaintiffs filed an *Amended Notice of Rule 2004 Examination and Request for Production of Documents* [Dkt. No. 3581] (**"2004 Notice"**). In so doing, the Named Plaintiffs purposefully did not proceed with discovery under Bankruptcy Rule 9014 (the procedure applicable to a contested matter).[5] The Debtors never objected to the 2004 Notice, and by local rule, the 2004 Notice acquired the force of an order of court. BLR 2004-1(e) ("If no response is served, the notice to conduct an examination under this rule is deemed ordered, without requiring the entry of an order.").

---

[4] A turnover motion cannot be used to establish ownership over disputed assets. See, e.g., S. Cal. Pub. Power Auth. V. Ultra Res., Inc., No. 4:19-cv-00090, 2020 WL 13413726, at *1 (S.D. Tex. Mar. 27, 2020) (stating that "[i]t is settled law that turnover actions under § 542 cannot be used to demand assets whose title is in dispute." (quoting United States v. Inslaw, Inc., 932 F.2d 1467, 1472 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992)); Tow v. HBK Main St. Invs., L.P., (In re ATP Oil & Gas Corp.), No. 12-36187, 2015 WL 1093568, at *3 (Bankr. S.D. Tex. Mar. 11, 2005) (Isgur, J.). Debtors needed to use a lawsuit—an adversary proceeding—to establish their rights to the property in dispute. See In re TransAmerican Natural Gas Corp., 978 F.2d 1409, 1416 (5th Cir. 1992) (citing 9 Collier on Bankruptcy, ¶ 9014.05 (15th ed. 1992); In re Wood & Locker, Inc., 868 F.2d 139, 142 (5th Cir.1989)) (noting that contested matters afford less procedural protections than adversary proceedings and are designed for adjudication of simple issues often on an expedited basis). The Named Plaintiffs needed an adversary proceeding to get the class-wide declaratory and equitable relief establishing plan participants' exclusive rights to the Plan Assets.

[5] Other than their Turnover Objection, the Named Plaintiffs never participated in or litigated in the Contested Matter because should a class action be commenced due to a bona fide dispute as to the ownership of the Trust Assets, a turnover motion under Section 542 of the Bankruptcy Code would be moot as an improper procedural vehicle to decide the question. The Named Plaintiffs litigated within the Contested Matter under protest and because they were left with no choice but to prepare for the rescheduled March 26, 2025 hearing while also seeking to stay and/or continue that hearing so that their Motion to Withdraw (defined below) could be adjudicated. Despite the Motion to Withdraw now having been fully briefed, this Court has still not issued a recommendation to the district court, and the district court has not had an opportunity to rule on that motion. Southern District of Texas Bankruptcy Rule (**"BLR"**) 5011-1.

7. Following delayed initial document production by the Debtors under the 2004 Notice—and little more than 2 months after reserving the right to do so—on March 3, 2025, the Named Plaintiffs initiated this adversary proceeding (the "**Adversary Proceeding**") by filing a class-action complaint seeking the equitable relief they had reserved the right to seek in the Turnover Objection [Adv. Pro. No. 25-03066, Dkt. No. 1] ("**Adversary Complaint**"). In short, the Named Plaintiffs did exactly what they said from the outset that they would do.

8. With the filing of the Adversary Complaint, the Named Plaintiffs filed a motion seeking mandatory withdrawal of the reference under 28 U.S.C. §157(d) because the Adversary Complaint required detailed consideration of ERISA [Adv. Pro. No. 25-03066, Dkt. No. 3] ("**Motion to Withdraw**"). At the same time, the Named Plaintiffs moved this Court for an order staying the hearing on the Turnover Motion pending resolution of the Motion to Withdraw [Dkt. No. 4089] ("**First Emergency Stay Motion**"). The First Emergency Stay Motion and Motion to Withdraw presented to this Court the various constitutional and jurisdictional bases requiring a pause of the hearing on the Turnover Motion so that a district court, as it must, could decide whether reference of the Adversary Proceeding would be withdrawn and the Turnover Motion stayed or dismissed (or merged into the Adversary Proceeding). As detailed below, the Named Plaintiffs contend that this Court was in fact barred from proceeding with the hearing on the Turnover Motion until an Article III court determined whether it—not this Court—had to adjudicate the issues, as detailed below.

9. On March 5, 2025, Debtors filed a reply in support of the Turnover Motion and response to the Named Plaintiffs' Turnover Objection [Dkt. No. 4105].

10. On March 7, 2025, this Court held a hearing on the First Emergency Stay Motion. At the hearing, this Court cancelled a hearing on the Turnover Motion originally scheduled for

March 11, 2025, ordered that Debtors complete document production by March 9 (a Sunday), and set the Turnover Motion for a full evidentiary hearing on March 26 ("**Turnover Evidentiary Hearing**"). See Dkt. No. 4166 (Minute Order). Under this ruling, the Named Plaintiffs had just 16 days to review yet-unproduced documents, depose witnesses, retain experts, and prepare for trial while at the same time protecting their rights and ensuring a complete record.[6] Before concluding the hearing on March 7, this Court stated that it would not otherwise order or compel any particular discovery, but the parties could file motions to compel if needed.[7]

11. The Named Plaintiffs subsequently commenced a miscellaneous proceeding with the district court and filed the *Emergency Motion for an Order Staying Hearing on Turnover Motion* [Case No. 4:25-mc-00461, Dkt. No. 1] (the "**Second Emergency Stay Motion**") on March 13, 2025, seeking to stay proceedings on the Turnover Motion while the Motion to Withdraw remained pending. The district court held a hearing on the Second Emergency Stay Motion on March 21, 2025, and denied the Second Emergency Stay Motion on March 24, 2025 [Case No. 4:25-mc-00461, Dkt. No. 46] without reaching the Article III issues discussed below.

12. Meanwhile, between March 7 and March 26, left with no other choice, the Named Plaintiffs took or defended a total of ten (10) depositions, the last one concluding after hours on March 25, 2025, the literal eve of the March 26 evidentiary hearing. Throughout this time, discovery continued to reveal new evidence, including previously undisclosed documents and material witnesses, including members of the Debtors' board of directors, facts that contradicted Debtors' prior representations to this Court and the Named Plaintiffs that the board was not

[6] Hogue Decl. ¶ 3, Ex. 1 (Mar. 7 Tr.) at 60:19-24 (The Court: "I'm now hearing 13 witnesses.").

[7] Hogue Decl. ¶ 3, Ex. 1 (Mar. 7 Tr.) at 75:3-20 ("The Court: You may want to schedule a deposition . . . but they have the right to say . . . they can . . . whatever they want. . . . I just - - I - - Without knowing anything more, I think less is more with me on that point.").

involved in critical decisions about the Deferred Compensation Plans. Obviously, there was no time for follow-up discovery on such revelations.

13. In light of the newly discovered evidence, on March 24, 2025, the Named Plaintiffs filed the *Plan Participants' Emergency Motion to Continue March 26, 2025 Hearing on Turnover Motion* [Dkt. No. 4289] (the "**Motion to Continue**") with this Court, seeking to continue the Turnover Evidentiary Hearing to afford both parties reasonable time to develop the record necessary for this Court to reach the best conclusion on the Turnover Motion.

14. Nevertheless, on March 26, 2025, this Court held an evidentiary hearing on the Turnover Motion. In the opening argument, counsel for the Named Plaintiffs reserved all of the rights and contentions outlined below. At that hearing, the Court admitted nearly 300 exhibits, heard live testimony from five (5) witnesses, and took into evidence eleven (11) witness declarations and related deposition transcripts for the eleven witnesses (which constituted cross examination). The need to use written testimony from the majority of witnesses was completely driven by the compressed timetable.

15. On April 1, 2025, this Court notified the parties that it had reached a decision on the Turnover Motion and that it was prepared to announce that decision at 3:00 p.m. CT on April 2, 2025 from the bench. At the scheduled time, the Court announced that it would grant the Turnover Motion and read into the record its reasoning (the "**Turnover Order**"). The Court, in response to the Named Plaintiffs' oral motion to stay the Turnover Order pending appeal, denied the motion for a stay but nonetheless ordered that its Turnover Order would become effective on 11:59 CT on April 11, 2025.

### C. The Named Plaintiff's Appeal of the Turnover Order.

16. Following this Court's ruling on the Turnover Motion, on April 4, 2025, the Named Plaintiffs filed a Notice of Appeal with respect to the Turnover Order with this Court [Dkt. No.

4421]. On April 7, 2025, the United States District Court for the Southern District of Texas (the **"District Court"**) assigned the appeal to Judge George C. Hanks, Jr. and docketed the matter as Civil Action No. 4:25-cv-01584 (the **"Turnover Appeal"**). [Dkt. No. 4442; Case No. 4:25-cv-01584, Dkt. No. 1].

17. Also on April 7, 2025, the Named Plaintiffs filed *Appellants' Emergency Motion for Stay Pending Appeal (Including Motion for Immediate Stay Pending Hearing on the Emergency Motion for Stay Pending Appeal)* [Case No. 4:25-cv-01584, Dkt. No. 2] (the **"Third Emergency Stay Motion"**), seeking a stay of the effective date of the Turnover Order while the Turnover Appeal was pending. The District Court denied the Third Emergency Stay Motion on April 11, 2025 [Case No. 4:25-cv-01584, Dkt. No. 15] again without reaching the Article III issues discussed herein.

18. The Turnover Appeal remains pending before the District Court, the parties having filed statements of issues on appeal and designations of the record and now awaiting a briefing schedule.

## <u>OBJECTION AND ARGUMENT</u>

### A. <u>Ruling on the Motion Violates Article III Principles While the Motion to Withdraw Remains Pending.</u>

19. A district court has sole and exclusive authority, grounded in Article III, to decide a motion to withdraw the reference, and the absolute necessity of access to an Article III court is prescribed by multiple opinions of the Supreme Court. <u>See, e.g.,</u> <u>Stern v. Marshall,</u> <u>564 U.S. 462, 484,</u> <u>131 S. Ct. 2594, 2609</u> (2011). Only a district court can rule on a motion to withdraw reference; this Court cannot do so, directly or indirectly. While some jurisdictions permit motions to withdraw reference to be filed directly with the district court, in the Southern District of Texas, the local rules provide that the bankruptcy court presiding over the matter first consider a motion

to withdraw the reference and file a report and recommendation that then gets transferred to the applicable district court. BLR 5011-1 ("Unless the district court orders otherwise, the matter will first be presented to the bankruptcy judge for recommendation."). General Order 2012-6 of the United States District Court for the Southern District of Texas implements this rule.

20. Even though the filing of a motion to withdraw the reference does not automatically stay proceedings in the bankruptcy court, Fed. R. Bankr. P. 5011(c), a bankruptcy court is nonetheless barred from taking any action in such proceedings that would interfere with or moot the district court's ultimate decision on the motion to withdraw the reference. As the Eleventh Circuit definitively held, the bankruptcy court cannot take any action, including even issuing an order dismissing the entire chapter 11 case, that preempts the district court's ruling on a motion to withdraw the reference without running afoul of Article III:

> Therefore, the district court did not err when it found that Article III barred the bankruptcy court from issuing a Section 305 order [dismissing the case] and granted the plaintiff's motion to withdraw the instant case from the bankruptcy court.
>
> The bankruptcy court exists to provide debtors and creditors with a specialized forum for the prompt and speedy resolution of bankruptcy proceedings. There is no question that they perform necessary and useful service by minimizing the dislocation suffered by individual debtors and creditors as well as the economy as a whole. Nevertheless, Congress has vested original jurisdiction over cases and proceedings under Title 11 in the district courts. The bankruptcy courts obtain jurisdiction over Title 11 cases or proceedings only by referral at the discretion of the district courts, and the district court may withdraw such reference for cause. As discussed above, this is not a hollow requirement. Nevertheless, the cause prerequisite should not be used to prevent the district court from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court in order to fulfill its supervisory function over the bankruptcy courts.

In re Parklane/Atlanta Joint Venture, 927 F.2d 532, 538 (11th Cir. 1991).

21. The Adversary Complaint seeks determination of the Named Plaintiffs' ownership

and rights to the Plan Assets, which necessarily requires a determination of the rights and responsibilities of the Named Plaintiffs and Debtors under ERISA—and only ERISA. As argued more fully in the Motion to Withdraw, that triggers mandatory withdrawal of the reference at the Named Plaintiffs' request. The Turnover Order nonetheless declared Debtors to be the owners of the Plan Assets after a truncated and abbreviated process that deprived the Named Plaintiffs of the due process to which they were entitled. This Court was, however, barred under Article III from issuing that ruling in the face of the pending Motion to Withdraw and the Named Plaintiffs contend that the Turnover Order is, therefore, a nullity.

22. The Motion to Withdraw remains pending before this Court, yet, through the Motion, the Debtor Defendants seek to dismiss the Adversary Proceeding by filing the Motion, requesting that this Court again act in contravention to Article III principles. Ruling on the Motion and dismissing the Adversary Proceeding under the present circumstances would preempt the District Court's ruling on the Motion to Withdraw (and the Named Plaintiffs' rights to have such request heard by the District Court), and this Court lacks the constitutional authority to so rule. Therefore, denial of the Motion is warranted.

**B. The Adversary Proceeding is Non-Core, and, Therefore, This Court Cannot Issue a Final Judgment on the Motion.**

23. Pursuant to 28 U.S.C. § 157(b), bankruptcy judges have jurisdiction "to hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred . . . [by the district court], and may enter appropriate orders and judgments." A list of core proceedings is enumerated under 28 U.S.C. § 157(b)(2). However, a proceeding is not core "[i]f [it] does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy . . .." Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987). A bankruptcy court may also oversee a matter that is non-core but "is

otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). However, "[w]hile bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters." In re Longhorn Paving & Oilfield Servs., Inc., 648 B.R. 300, 305 (Bankr. S.D. Tex. 2023) (citing 11 U.S.C. §§ 157(b)(1) and (c)(1); Stern v. Marshall, 564 U.S. 462, 480, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011); Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 135 S. Ct. 1932, 1938-40, 191 L. Ed. 2d 911 (2015)). Such reports and recommendations are then subject to the district court's own *de novo* review. 11 U.S.C. § 157(c)(1).

24. As set forth in the Adversary Complaint, the matter before this Court is grounded entirely in ERISA and is, at best, within this Court's "related to" jurisdiction; the matter does not arise in the bankruptcy case or Code or arise under the Bankruptcy Code. Further, as set forth in the Adversary Complaint, the Named Plaintiffs expressly did not consent to this Court entering final judgment in the matter, and at no time thereafter did the Named Plaintiffs consent to this Court entering final judgment by action, inaction, or waiver. The Named Plaintiffs litigated through the Contested Matter below because they were left with no choice and protested that lack of choice at every stage, including via the Emergency Stay Motions, the Motion to Continue, and the Motion to Withdraw. In opening argument before the Court on March 26, 2025, counsel for the Named Plaintiffs stated to this Court that all such arguments were preserved and not waived by proceeding. Accordingly, in light of this and the additional Article III concerns noted above, any proposed findings of facts and conclusions of law issued by this Court regarding the relief sought in the Motion must remain subject to review by the District Court, and only the District Court can enter a final order in this Adversary Proceeding.

**C. This Court Should Exercise its Discretion to Stay this Adversary Proceeding, or, At Least, Delay Adjudicating the Motion, for the Sake of Judicial Efficiency.**

*i. A Stay of the Adversary Proceeding While the Turnover Order is on Appeal is Proper Under Bankruptcy Rule 5011(c).*

25. A motion to withdraw reference filed pursuant to Bankruptcy Rule 5011(a) and (b) does not automatically stay proceedings in the underlying bankruptcy case. See Fed. R. Bankr. P. 5011(c). Pursuant to Bankruptcy Rule 5011(c), "a bankruptcy judge may, on proper terms and conditions, stay a proceeding until the motion is decided." According to subpart (d) of Bankruptcy Rule 5011, a "motion to stay a proceeding must ordinarily be submitted first to the bankruptcy judge."

26. "A bankruptcy court determining whether to stay proceedings [pursuant to Bankruptcy Rule 5011(c)] should consider: the likelihood that the Motion for Withdrawal of Reference will be granted; the harm to the movant if proceedings are not stayed; the harm to the other party if a stay is imposed; and the public interest." In re Beach First Nat. Bancshares, Inc., No. ADV 10-80143, 2011 WL 2441501, at *1 (Bankr. D.S.C. Jan. 21, 2011). The moving party bears the burden of proof in demonstrating that a stay would be proper. See id.; Sec. & Exch. Comm'n v. Pension Fund of Am., L.C., No. 05-20863, 2005 WL 8156247, at *2 (S.D. Fla. Nov. 7, 2005).

27. As noted above, the Named Plaintiffs filed a Motion to Withdraw that is still pending in this Adversary Proceeding. To begin, the Motion to Withdraw is likely to succeed on the merits. As set forth in more detail in the Motion to Withdraw, the relief sought in the Adversary Complaint and Adversary Proceeding requires, exclusively, substantial interpretation of a detailed, federal non-bankruptcy statute (ERISA); necessitates material application of federal non-bankruptcy caselaw interpreting that statute; and entails no material consideration of bankruptcy law. The issues raised in the Adversary Complaint and this Adversary Proceeding present the paradigmatic context for mandatory withdrawal of the reference: the presiding court will have to

resolve substantial and material issues of federal non-bankruptcy law, many not fully resolved in the Fifth Circuit, following a detailed and complex presentation of evidence concerning a number of quantitative and qualitative factors unique to this "rare subspecies" of ERISA-governed plans. See, e.g., Beach First Nat. Bancshares, Inc., 2011 WL 2441501, at *2 (when considering the likelihood of success on the merits prong in a motion to stay pursuant to Bankruptcy Rule 5011, explaining that "[i]f [a federal statute] is implicated, this Court will ultimately not hear the adversary," and granting the motion to stay).

28. Second, the denial of a stay would harm the Named Plaintiffs. If the Adversary Proceeding is not stayed, the Named Plaintiffs will need to extend duplicative efforts with both this Court in the Adversary Proceeding and the District Court arguing their appeal of the Turnover Order. There is significant overlap between the matters at issue in the Adversary Proceeding and the Turnover Order. Therefore, proceeding with the Adversary Proceeding while the Turnover Order is on appeal would waste party resources and risk inconsistent results that could harm the Named Plaintiffs.

29. Third, the stay will not harm the Debtors. This Court ruled in favor of the Debtors with the Turnover Order, and since the Turnover Order became effective on April 11, 2025, the Plan Assets have been turned over to the Debtors, and the Debtors have been able to distribute, without further court supervision, those Plan Assets to pay bankruptcy professionals and lenders pursuant to the terms of the proposed order filed with the Turnover Motion and Turnover Order, subject to the rights of the Named Plaintiffs to claw back such payments. Further, the Adversary Proceeding is in its early stages, and the Debtors would not be harmed if the Adversary Proceeding were stayed while the Turnover Appeal remains pending before the District Court.

30. Finally, the public interest would be served by staying the Adversary Proceeding.

The legal bases underpinning the Turnover Appeal have near-complete legal and factual overlap with the relief requested in the Adversary Complaint. The factual and legal issues only summarily presented in the Contested Matter are necessarily subsumed in the Adversary Complaint and the Adversary Proceeding and will be resolved in the course of that class action litigation. It therefore would be a waste of judicial and party resources to litigate the issues in two different forums and would risk inconsistent outcomes and potentially competing appeals. It is thus in the public interest to stay the Adversary Proceeding pending the District Court's adjudication of the Turnover Appeal. Therefore, staying the Adversary Proceeding until the Turnover Appeal is fully adjudicated to a final order, rather than granting the Motion and dismissing the Adversary Proceeding, is appropriate

***ii. This Court Has Inherent Authority to Manage Its Docket and Stay the Adversary Proceeding.***

31. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Such inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. See also, Landis v. N. Am. Co., 299 U.S. 248, 254 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). This power is "equally applicable to the bankruptcy court." Matter of Case, 937 F.2d 1014, 1023 (5th Cir. 1991). "A bankruptcy court has the power 'to protect its jurisdiction and judgments and to control its docket.'" In re Jones, 418 B.R. 687, 697 (Bankr. E.D. La. 2009) (quoting Farguson v. MBank Houston, N.A., 808 F.2d 358, 360 (5th Cir. 1986)), aff'd sub nom. Jones v. Wells Fargo Bank N.A.,

No. CIV. 07-3599, 2010 WL 3398849 (E.D. La. Aug. 24, 2010)

32. This Court, therefore, has inherent authority to manage its docket, and adjudicating the Motion before the Turnover Appeal is fully and finally resolved would be inefficient and a waste of judicial resources. If this Court grants the Motion, dismissing the Adversary Proceeding prior to the District Court ruling on the Turnover Appeal, then, should the District Court rule in favor of the Named Plaintiffs upon appeal—as the Named Plaintiffs have strong reason to believe to be the case—the Named Plaintiffs would need to commence a new adversary proceeding that would be duplicative of the current Adversary Proceeding. Likewise, the Named Plaintiffs would be required to incur the cost of an appeal from this Court's decision, thus creating duplicating appeals and multiplying costs. In the alternative, if the Court stays the Adversary Proceeding or defers ruling on the Motion until the Turnover Appeal is complete, then judicial resources would be conserved and conflicting proceedings would be avoided.

## RESERVATIONS OF RIGHTS

33. The Named Plaintiffs reserve all of their rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Objection and to raise additional objections at the hearing to consider the Motion.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Named Plaintiffs respectfully submit that the Motion should be denied.

Dated: May 15, 2025

*/s/ Christopher D. Johnson*
Allan B. Diamond, Esq.
Christopher D. Johnson, Esq.
Diamond McCarthy, LLP
909 Fanin Street, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199
Email: allan.diamond@diamondmccarthy.com
chris.johnson@diamondmccarthy.com

Robert J. Keach, Esq., *admitted pro hac vice*
Adam R. Prescott, Esq., *admitted pro hac vice*
Paul McDonald, Esq., *admitted pro hac vice*
**BERNSTEIN, SHUR, SAWYER & NELSON**
100 Middle Street
P.O. Box 9729
Portland, ME 04104-5029
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
Email: rkeach@bernsteinshur.com
aprescott@bernsteinshur.com
pmcdonald@bernsteinshur.com

*Counsel for the Named Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2025, the foregoing pleading was filed electronically with the Clerk of Court via the court's CM/ECF system, which caused a copy of same to be transmitted to all counsel of record in this action.

*/s/ Christopher Johnson*

Edan Lisovicz, Akin Gump Strauss Hauer & Feld LLP
Client(s): Unsecured Creditors Committee

Melanie Miller, Akin Gump Strauss Hauer & Feld
Client(s): Official Committee of Unsecured Creditors

Patricia Redmond, Stearns Weaver Miller et al.
Client(s): Gabriela Gonzalez, Bruno Nascimiento, Elizabeth Washington as PR for Silas Washington, Marta Martin as PR for Angel Padron

Scott Howard, Medical Device Innovations LLC
Client(s): Medical Device Innovations LLC

Christopher Johnson, Diamond McCarthy LLP
Client(s): Drs. Purohit, Paggioli, Thomas, Ross, Regan, Lydon, Ganda and Beesen

Sarah Schultz, Akin Gump Strauss Hauer & Feld LLP
Client(s): Official Committee of Unsecured Creditors

Jay Ong, Munsch Hardt Kopf & Harr, P.C.
Client(s): Dr. Richard Demopoulos

Beverly Bass, Munsch Hardt Kopf & Harr, P.C.
Client(s): Dr. Richard Demopoulos

Brian Kinney, Milbank LLP
Client(s): FILO and DIP Parties

Samir Vora, Milbank LLP
Client(s): FILO and DIP Parties

Robert Berezin, Weil, Gotshal & Manges LLP
Client(s): Debtors

Greg Silbert, Weil, Gotshal & Manges LLP
Client(s): Debtors

David Cohen, Weil, Gotshal & Manges LLP
Client(s): Debtors

Taylor Dougherty, Weil, Gotshal & Manges LLP
Client(s): Debtors

Samuel Levin, Grom Law Group, Chartered
Client(s): Debtors

Shai Bronshtein, Groom Law Group, Chartered
Client(s): Debtors

John Castellano, Pro Se, None, Pro Se
Client(s): Chief Restructuring Officer, Steward Health Care System LLC

Patrick Lombardo, Pro Se, None, Pro Se
Client(s): Former Executive VP, HR, Steward Health Care System LLC

Katchena Potter, Pro Se, None, Pro Se
Client(s):

Director, Benefits, Steward Health Care System LLC

Ann-Marie Driscoll, Pro Se, None, Pro Se
Client(s): Former CP, Total Rewards & HR Operations, Steward Health Care System LLC

Joseph Krock, Pro Se, None, Pro Se
Client(s): Managing Director, Stout Risius Ross, LLC

Matthew Silverman, Arizona Attorney General's Office
Client(s): State of Arizona

Scott Howard, Pro Se, None, Pro Se
Client(s): Medical Device Innovations LLC